### UNITED STATES *v.* THREE TRUNKS, etc.

(*District Court, D. California.* 1881.)

1. REVENUE—PENALTIES AND FORFEITURES—IMPORTS—REV. ST. § 2809 — ACT OF JUNE 22, 1874, § 16.

   To enforce a forfeiture under section 2809 of the Revised Statutes, which relates to the importation of merchandise into the United States from abroad, the government must show affirmatively an "actual intention to defraud," under section 16 of the act of June 22, 1874.

2. CASE STATED.

   Where a libel for information was filed against a vessel's boatswain to enforce a forfeiture, under section 2809 of the Revised Statutes, for attempting to import foreign goods without entering them in the vessel's manifest, *held*, that it must be dismissed, in the absence of any attempt at concealment and in view of the fact that the practice of making such importations had been tolerated and apparently recognized as legal by the custom-house officials, and the further fact that the boatswain, a native of China, had no reason to suppose that he was thereby violating the law.

HOFFMAN, D. J.   The libel for information in this case is filed to enforce a forfeiture under section 2809 of the Revised Statutes. That section is as follows:

"If any merchandise is brought into the United States in any vessel whatever from any foreign port without having such a manifest on board, or which shall not be included or described in the manifest, or shall not agree therewith, the master shall be liable to a penalty equal to the value of such merchandise not included in such manifest, *and all such merchandise not included in the manifest, belonging or consigned to the master, mate, officers, or crew of such vessel,* shall be forfeited."

The goods seized were three trunks or cases of silk handkerchiefs. They were found in the boatswain's room, and are claimed by him as his own. They were not entered on the manifest. But there does not appear to have been any attempt to conceal their presence on board from the master or the officers of the customs. The omission to describe the goods in the manifest was not the result of mistake or accident. There does not appear to have been any intention to. so describe them. They were imported under the idea that the importation was permittted by law, provided the duties were paid· on the arrival of the vessel. The importation was, however, clearly illegal, and the facts of the case bring it directly within the provisions of the section which has been cited. It is claimed, however, that the forfeiture denounced by section 2809 cannot be enforced unless it appear that there was "*an actual intention to defraud the United States.*" Section 16 of the act of June 22, 1874, in substance provides that in all suits to enforce forfeitures, etc., for any violation of the customs revenue laws—

"It shall be the duty of the court to submit to the jury, as a *distinct* and *separate proposition,* whether the alleged acts were done with an actual intention to defraud the United States; and if the issues are tried by the court without a jury, it shall be the duty of the court to pass upon and decide such proposition as a distinct and separate finding of fact; and unless intent to do fraud shall be so found, no forfeiture, etc., shall be imposed."

The laws of the United States regulating commerce and navigation are necessarily rigorous in their exactions, and highly penal. They inflict forfeitures and penalties for the non-observance of their injunctions without regard, in general, to the *motives* of the offender. Conk. Treat. 739. Their severity, however, was, from a very early period in the history of our government, tempered by enactments which permitted the offending or interested party to cause a summary inquiry into the facts of the case to be instituted by the district judge, by whom the facts so ascertained were to be reported to the secretary of the treasury; and if, in the opinion of that officer, the penalty or forfeiture had been incurred "without wilful negligence or any intention to defraud," he was authorized to grant a remission. These provisions were supposed, until a comparatively recent period, to afford ample protection against the rigorous application of the laws to cases of accidental and innocent violation of their provisions. The power of remission confided to the secretary has been freely and liberally exercised; nor can I recall an instance where a remission has been unreasonably or unjustly withheld.

When the violation of the law is admitted or judicially established, the burden of proof is very reasonably cast upon the offender to show that it was committed without wilful negligence or intention to defraud. And in permitting a remission after such proof is furnished, the act went as far as justice or reason requires, or as is consistent with the efficient execution of the revenue laws. But by the sixteenth section of the act of 1874, which was passed under very exceptional circumstances, the burden of proof to show an "*actual intention to defraud the United States*" is thrown upon the government, and unless that intention is found by the jury or court "as a distinct and separate proposition," no penalty or forfeiture can be imposed. It is not sufficient under this section that the intention of the party *may* have been fraudulent. The court or jury must find that it was so in fact. This finding they can only reach when the proofs preponderate in its favor. In all cases, therefore, where the government fails to show affirmatively an "actual intention to defraud," judgment must be against it.

In the case at bar it is established beyond controversy that for a long series of years the practice of importing goods by the officers and crews of steamers, without entering them on the manifest, has been tolerated, and apparently recognized as legal, by the custom-house authorities. The duties on such goods, when declared by the importer or found by the officers, have been paid and accepted, nor has the penalty imposed on the master ever been exacted or the goods seized, except when they were concealed with an evidently fraudulent purpose.

It seems to have been supposed that the laws and regulations with regard to dutiable goods found among the personal baggage of passengers, could be applied to unbroken cases of merchandise imported by the officers and crews. That this practice opened a wide door to fraud is evident, and the seizure now in question is an attempt by the present collector to put an end to it. There can be no question that in many instances these importations, thus sanctioned by the officers of the revenue, have been made without the slightest intention to evade the payment of duties, or suspicion of their illegality. In many others they have been made with the design of smuggling the goods if opportunity offered; a design which has, no doubt, in very numerous cases been accomplished. To which of these categories the importation of the goods in question in this case is to be referred, I have no means of knowing. It has already been said that no concealment of them was made or attempted. The importer, a Chinese boatswain,

had no reason to suppose that, in omitting to have them entered on the manifest, he was violating the laws. It is quite probable that he may have made many similar importations without question or objection.

Under these circumstances, I do not see how a jury or court can find, as "a distinct and separate proposition," established by the proofs in the case, that the importation was made "with an actual intention to defraud the United States."

The libel of information must, therefore, be dismissed. But it must not be inferred from this decision that the law will, in all cases of this description, be found powerless to punish for the violation of its commands. The present decision turns, in a great measure, on the fact that the importer was excusably ignorant of the illegality of his acts. When the knowledge of the law shall have been brought home to the officers and crews of the steamers, and the custom-house authorities shall have ceased to tolerate these illegal importations, if they shall still be wilfully and knowingly persisted in, it will be for the court or jury to say whether such persistence is not sufficient evidence of actual intention to defraud to satisfy even the requirements of section 16 of the act of 1874.